IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00095-MR

| | |
|---|---|
| TRACEY T. GRADY, | ) |
| Plaintiff, | ) |
| vs. | ) |
| B.S., et al., | ) ORDER |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of the Amended Complaint [Doc. 14]. Also pending are Plaintiff's Motions for Reconsideration [Docs. 15, 16]. Plaintiff is proceeding *in forma pauperis.* [Doc. 12].

I. **BACKGROUND**

*Pro se* Plaintiff, who is a pretrial detainee at the Union County Jail, filed this civil rights suit pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred in Monroe, North Carolina. The Complaint was dismissed on initial review for failure to state a claim upon which relief can be granted

and pursuant to the Younger abstention doctrine.[1]  [Doc. 13].   The Plaintiff was given 30 days to amend.  [Id.].

The Amended Complaint [Doc. 14] is now before the Court on initial review.  The Plaintiff names as Defendants: Steve Morton, a Monroe Police Department ("MPD") sergeant; Baucom Sawyer, Steven Helms, Kyle Purser, and Michele Shoultes, MPD officers; Sharon Hinton, a DNA examiner in the Raleigh crime lab; and B.S., the victim in Plaintiff's rape case.

In the Amended Complaint, the Plaintiff alleges that he was at a Waffle House restaurant parking lot on May 14, 2019, when B.S. forced her way into the Plaintiff's car, assaulted him, and damaged his car during a "violent attack [in which B.S.] demand[ed] drug money."  [Doc. 14 at 7].

The Plaintiff alleges that Defendant Morton attempted to question the Plaintiff at his home on May 14 and 15, 2019, about allegations that the Plaintiff had kidnapped B.S. from the Waffle House and raped her.  The Plaintiff invoked his right to remain silent, requested counsel, and asked Morton to leave the residence unless he had a warrant.  The Plaintiff alleges that Defendant Morton then attempted to intimidate the Plaintiff by using threats and racial slurs, and racially profiled him because B.S. is Morton's friend.  [Id. at 4].

---

[1] Younger v. Harris, 401 U.S. 37 (1971).

2

Case 3:20-cv-00095-MR   Document 21   Filed 02/23/21   Page 2 of 19

The Plaintiff alleges that on May 20, 2019, Defendants Helms and Morton conducted a photo lineup with B.S.  He alleges that B.S. selected a different individual, but that Defendants Helms and Morton then "illegally coerce[d]" her by showing her surveillance video and telling her that the Plaintiff was the rapist.  [Id. at 6].

The Plaintiff further alleges that Defendant Morton attempted to interview the Plaintiff and his mother, Linda Johnson ("Linda"), at Linda's home on May 23, 2019.  The Plaintiff claims that Defendant Morton told Linda that the Plaintiff had kidnapped B.S. from the Waffle House and took her to a cornfield where he raped her.  The Plaintiff alleges that this was an abuse of authority by Defendant Morton because DNA evidence had not been collected yet, and therefore, Defendant Morton lacked probable cause.  The Plaintiff appears to allege that Defendant Morton again used threats and racial slurs, racially profiled him, and acted with "malice and a culpable state of mind," bias, and "racist deliberate indifference" because he knew B.S. personally.  [Id. at 4].

The Plaintiff alleges that Defendants Sawyer and Purser arrested him the next day, May 24, 2019, without reading him his Miranda[2] rights.  He further alleges that Defendants Sawyer and Purser intentionally used

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

excessive force by "slamming [Plaintiff's] head into the police car, injuring his neck and back for life and causing physical and mental anguish." [Id. at 8]. The Plaintiff alleges that Defendant Morton witnessed the assault by Defendants Sawyer and Purser but failed to protect him from Sawyer and Purser's actions. The Plaintiff alleges that Defendant Morton continued to harass and threaten him at a court appearance and then, at the Jail, Defendant Morton used excessive force by "push[ing] [Plaintiff] around violently causing pain" while the Plaintiff was still injured. [Id. at 4]. The Plaintiff also appears to allege that Defendant Morton retaliated against the Plaintiff for remaining silent by denying him medical treatment. [See id. at 4, 11].

The Plaintiff alleges that testing by DNA examiner Samatha Chitkhin[3] excluded the Plaintiff as the source of DNA from several of B.S.'s swabs, which were then returned to MPD. The Plaintiff alleges that Defendants Morton and Shoultes tampered with the swabs and resubmitted them for further testing by Defendant Hinton, which then came back consistent with the Plaintiff's DNA. [Id. at 6].

The Plaintiff alleges that B.S. is a confidential informant for police and that she "illegally conspired with Sgt. Steve Morton to fram[e] and set

---

[3] The Plaintiff has not named Chitkhin as a Defendant.

[Plaintiff] up with rape charges" in exchange for her a "deal" on her own pending charges. [Id. at 7]. The Plaintiff further alleges that B.S. "coerced her boyfriend … to kill [Plaintiff] while in jail."[4] [Id.].

Plaintiff seeks injunctive relief including the dismissal of the North Carolina criminal case, compensatory and punitive damages, and a jury trial. [Id. at 11].

## II. STANDARD OF REVIEW

Because the Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520

---

[4] The Plaintiff has not named B.S.'s boyfriend as a Defendant.

(1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## IV. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Individuals Not Named as Defendants

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). The allegations directed at individuals not named as Defendants are therefore dismissed without prejudice.

## B. <u>Younger</u> Abstention

The Plaintiff asserts claims including false imprisonment, conspiracy, obstruction of justice, "racial profiling" and defamation based on the various Defendants' allegedly unconstitutional actions regarding the investigation and prosecution of his North Carolina kidnapping and rape case. [Doc. 14 at 8]. Among the relief the Plaintiff seeks is the dismissal of the criminal charges. [<u>Id.</u> at 11].

In <u>Younger</u>, the Supreme Court held that a federal court should not interfere with ongoing state court proceedings except in the most narrow and extraordinary of circumstances. <u>Younger v. Harris</u>, 401 U.S. 37, 43-44 (1971). Under <u>Younger</u>, abstention is proper in federal court when: (1) there is an ongoing state judicial proceeding that began prior to substantial progress in the federal proceeding; (2) that proceeding implicates important, substantial, or vital state interests; and (3) there is an adequate opportunity to raise constitutional challenges within the framework of the state judicial process. <u>Middlesex City Ethics Committee v. Garden State Bar Ass'n</u>, 457 U.S. 423 (1982); <u>Robinson v. Thomas</u>, 855 F.3d 278 (4th Cir. 2017). A federal court may disregard <u>Younger</u>'s mandate to abstain from interfering with ongoing state proceedings only where "extraordinary circumstances"

7

exist that present the possibility of irreparable harm.  Robinson, 855 F.3d at 286.

The Plaintiff alleges that he was falsely arrested and charged based on an investigation by racist and biased detectives who conspired with a DNA analyst to manufacture evidence against him.  He further alleges that he was not informed of his Miranda rights upon his arrest; that his requests for a lawyer and to remain silent were ignored; and that an identification by B.S. was procured through an improper photographic lineup procedure.

The Plaintiff does not dispute that the allegations in the instant case relate to his pending North Carolina rape and kidnapping charges.  Instead, he attempts to demonstrate the existence of extraordinary circumstances to avoid Younger abstention.  Specifically, the Plaintiff alleges that "[Plaintiff's] rape case has been damaged by a racist investigator who tampered with DNA evidence illegally [and] who knew the victim B.S. on a personal level." [Id. at 5].  He further alleges that B.S. is a confidential informant who is attempting to get a "deal" on her own pending charges.  [Id. at 7].  In light of these circumstances, he argues that it would be in the interest of justice to allow his claims to proceed.   [Id. at 5, 7].

The Plaintiff will have an opportunity to explore his challenges to the circumstances of his arrest and the investigation of his case in the state court

criminal proceedings. The State of North Carolina has a vital interest in prosecuting the Plaintiff's criminal action and the Plaintiff will have an adequate opportunity to address the present issues in the criminal proceedings. He has failed to demonstrate the existence of extraordinary circumstances presenting the possibility of irreparable harm. Therefore, all the Plaintiff's claims which are intertwined with his pending criminal case—including his claims of false imprisonment, conspiracy, obstruction of justice, "racial profiling" and defamation—will be dismissed without prejudice based on Younger abstention.

### C. Excessive Force Claims

The Plaintiff alleges that Defendants Sawyer and Purser used excessive force against him during his arrest, that Defendant Morton failed to intervene, and that Defendant Morton later used excessive force against him at the Jail. The Plaintiff further alleges that B.S. assaulted him in his car and that she asked her boyfriend to kill the Plaintiff in jail. [Doc. 14 at 4, 7].

A citizen's claim that law enforcement officials used excessive force in the course of making a "seizure" of his person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Conner, 490 U.S. 386, 388 (1989); Sigman v. Town of Chapel Hill, 161 F.3d 782, 786 (4th Cir.1998). As the Supreme Court has explained, "all claims that

9

law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395. In the end, objective reasonableness of the officer's probable cause determination is the touchstone. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. at 397.

A pretrial detainee's assertion that jail personnel used excessive force is also analyzed under the Fourteenth Amendment. See Graham, 490 U.S. at 395 n.10 (noting that the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment"). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time,

not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

First, the Plaintiff asserts that Defendants Purser and Sawyer used excessive force against him during his arrest when they intentionally slammed his head into the police car, injuring his neck and back, and that

11

Defendant Morton failed to intervene. This claim is plausible and will be permitted to pass initial review.

Second, the Plaintiff asserts that Defendant Morton pushed him around "violently" at the Jail the same day as his arrest while he was still injured from his encounter with Defendants Purser and Sawyer, which caused him pain. This claim is also plausible and will be permitted to pass initial review.

Third, it appears that the Plaintiff may be attempting to assert excessive force claims against B.S. for assaulting the Plaintiff in his car and for asking her boyfriend to kill the Plaintiff in Jail. These claims are subject to dismissal because the Plaintiff has failed to demonstrate that B.S. is a state actor for purposes of § 1983. The Plaintiff conclusively asserts that B.S. conspired with officers to set him up on rape charges. However, this vague and conclusory allusion to a conspiracy is insufficient to demonstrate that B.S. was a state actor for purposes of any alleged excessive force under § 1983. See DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999) ("To implicate 42 U.S.C. § 1983, conduct must be 'fairly attributable to the State.'"); Thomas v. Salvation Army So. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (affirming dismissal pursuant to § 1915(e)(2)(B)(ii) where plaintiff did not allege any facts that even remotely suggested that defendants' actions were attributable to the state).

Therefore, the Plaintiff's excessive force claims have passed initial review against Defendants Purser, Sawyer, and Morton. However, to the extent that the Plaintiff has attempted to assert excessive force claims against B.S, such claims are dismissed for failure to state a claim upon which relief can be granted.

### D. Retaliation Claim

The Plaintiff alleges that Defendant Morton retaliated against him for asserting his right to remain silent by withholding medical treatment from the Plaintiff at the Jail.[5]

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his]

---

[5] The Plaintiff does not appear to assert a claim for deliberate indifference to a serious medical need. Even if he had attempted to do so, such a claim would be dismissed because the Plaintiff has not adequately alleged that Defendant Morton knew of and deliberately disregarded an objectively serious medical need. See generally Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (discussing the deliberate indifference standard).

13

First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).

The Plaintiff has stated a plausible retaliation claim against Defendant Morton and it will be permitted to pass initial review.

**E.     Neglect**

The Plaintiff alleges in the Amended Complaint that he is trying to sue all of the Defendants except for B.S. for "neglect." [Doc. 14 at 11].

A § 1983 claim must be founded on a violation of the Constitution or United States laws; an allegation of negligence is insufficient to support a § 1983 claim. See generally Estelle v. Gamble, 429 U.S. 97 (1976). Further, the Plaintiff's bald allegation of "neglect" is devoid of any factual allegations such that it is too vague and conclusory to state any plausible claim under North Carolina law. Therefore, to the extent that the Plaintiff attempts to state claims for negligence, such claims will be dismissed for failure to state a claim upon which relief can be granted.

**D.     North Carolina Assault**

The Plaintiff appears to assert assault claims against Defendants Sawyer, Purser, Morton, and B.S. under North Carolina law.

14

North Carolina follows common-law principles governing assault and battery. An assault is an offer to show violence to another without striking him, and battery is the carrying of the threat into effect by the infliction of a blow. Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981). While a civil action for assault is available under North Carolina law, the use of force under the circumstances must be excessive for the claimant to prevail. Myrick v. Cooley, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496 (1988). Whether force was excessive is judged by a standard of objective reasonableness. Jordan v. Civil Svc. Bd., 153 N.C.App. 691, 698, 570 S.E.2d 912, 918 (2002).

The Plaintiff has stated plausible assault claims against Defendants Sawyer, Purser, and Morton, and such claims will be permitted to pass initial review. The Court therefore will exercise supplemental jurisdiction over the Plaintiff's state law claims of assault.

The Plaintiff further appears to allege that B.S. assaulted him in his car at the Waffle House parking lot and that she had her boyfriend attempt to kill the Plaintiff in jail. The Court declines to exercise supplemental jurisdiction over these claims because the Plaintiff has failed to state any § 1983 claim against B.S. Therefore, the Plaintiff's assault claims will proceed against

15

Defendants Sawyer, Purser and Morton, but the assault claims against B.S. will be dismissed.

**V.    PENDING MOTIONS**

The Plaintiff has filed two Motions for Reconsideration in which he appears to ask the Court to reconsider its Order on initial review of the Complaint. [Docs. 15, 16]. The Plaintiff argues *inter alia* that his claims are not barred by Younger and that the Complaint should have passed initial review. The Plaintiff's requests for reconsideration are denied as moot because the Plaintiff was given leave to amend the Complaint, which he has done, and the Amended Complaint has now been reviewed by the Court.

The Plaintiff also appears to request the appointment of counsel. The Plaintiff argues that he cannot afford counsel, that the case is complex, and that law libraries have been taken out of North Carolina jails.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Plaintiff has failed to demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel and Plaintiff's request is therefore denied.

Finally, the Plaintiff appears to seek the Court's recusal or disqualification from this case. The Plaintiff alleges that the Court is "being bias[ed], and unfair base[d] on the fact [Plaintiff] is a Black American who's trying to proceed in forma pauperis indigent, as a *pro se* litigant, under 42 U.S.C. § 1983 Federal Code." [Doc. 15 at 3].

Under 28 U.S.C. § 144, a litigant may seek recusal of a judge if the litigant files "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. Under 28 U.S.C. § 455, a justice, judge, or magistrate judge must disqualify himself in any proceeding in which his impartiality might be reasonably questioned. In this case the Court merely follows the law as applies to all persons.

The Plaintiff's request for recusal is insufficient to support relief and no no basis for disqualification appears in the record. Therefore, to the extent that the Plaintiff seeks the Court's disqualification or recusal, this relief is denied.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's claims for the use of excessive force against Defendants Purser, Sawyer, and Morton, and his retaliation claim against Defendant Morton survive initial review under 28 U.S.C. §

17

1915(e)(2) as such claims are not clearly frivolous. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault claims against Defendants Purser, Sawyer, and Morton. The remaining claims are dismissed without prejudice.

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint [Doc. 14] shall proceed against Defendants Purser, Sawyer, and Morton with respect to the Plaintiff's claims of excessive force under § 1983 and his claims of assault under North Carolina, and against Defendant Morton with respect to the Plaintiff's claim for retaliation under § 1983.

2. The remaining claims are dismissed for failure to state a claim upon which relief can be granted and as barred by Younger v. Harris, 401 U.S. 37 (1971).

3. The Plaintiff's Motions for Reconsideration [Docs. 15, 16] are **DENIED**.

4. The Clerk is directed to mail summons forms to the Plaintiff for the Plaintiff to fill out and return for service of process on **Defendants Purser, Sawyer,** and **Morton.** Once the Court receives the completed summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the form has been mailed to Plaintiff.

**IT IS SO ORDERED.**

Signed: February 22, 2021

Martin Reidinger
Chief United States District Judge