# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:20-cv-00095-MR

TRACEY TERRELL GRADY,       )
                              )
         **Plaintiff,**       )
                              )     <u>MEMORANDUM OF</u>
**vs.**                        )     <u>DECISION AND ORDER</u>
                              )
**B.S., et al.,**            )
                              )
         **Defendants.**    )
_____ )

      **THIS MATTER** is before the Court on Defendants Steve Morton, Kyle

Purser, and Sawyer Baucom's Motion for Summary Judgment [Doc. 60].

Also pending is the Plaintiff's "Motion for Summary Judgment Filed in Legal

Opposition to the Defendants' Motion for Summary Judgment" [Doc. 69].

## I.    BACKGROUND

      The incarcerated Plaintiff Tracey Terrell Grady, proceeding pro se, filed

this action pursuant to 42 U.S.C. § 1983 and North Carolina law addressing

incidents that allegedly occurred in Monroe, North Carolina.[1]  The Plaintiff's

_____

[1] The Plaintiff is a pretrial detainee at the Union County Jail (UCJ) on charges of second-degree kidnapping, second-degree forcible rape, second-degree force sex, assault by strangulation, injury to trees/crops/land of another, and crime against nature, Case Nos. 19CR052183, 19CR052184, and 19CR052185. This information was gleaned, in part, from the Union County Sheriff's Office (UCSO) website. <u>See</u> http://sheriff.co.union.nc.us/InmateDetail.aspx?navid=637908752248365595 (last accessed June 15, 2022); Fed. R. Evid. 201.

verified[2] Complaint was dismissed on initial review, and the Plaintiff was granted the opportunity to amend. [Doc. 1: Complaint; Doc. 13: Order on Initial Review of the Complaint]. The Plaintiff's unverified Amended Complaint passed initial review on claims of excessive force against Defendants Kyle Purser, a Monroe Police Department ("MPD") detective; Sawyer Baucom, an MPD officer; and Steve Morton, an MPD lieutenant, as well as a claim of retaliation against Defendant Morton. [Doc. 14: Amended Complaint; Doc. 21: IR of the Am. Complaint]. The Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault claims against the Defendants. [Id.]. The Plaintiff seeks injunctive relief, compensatory and punitive damages, and a jury trial. [Id. at 11].

Defendants Morton, Purser, and Sawyer filed the instant Motion for Summary Judgment. [Doc. 60; see Doc. 61]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the

---

[2] The Plaintiff's original Complaint consists of a total of 18 pages. It is presented on an eleven-page form provided by the Court, with six additional pages attached and included within, and one additional page added at the end. The eleventh page of the form Complaint (which, with the additional pages added, became the seventeenth page of the Complaint) is signed and dated by the Plaintiff. The eighteenth page of the Complaint appears to be a page from a different form used for seeking to proceed without prepaying costs or fees. This last page is also signed by the Plaintiff, but under penalty of perjury. While the Plaintiff's intent in attaching this last page is unclear, it appears that he may have done so in order to verify his Complaint. Therefore, giving the Plaintiff the benefit of the doubt, the Court will construe the Complaint as verified.

2

summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 67: <u>Roseboro</u> Order].  The Plaintiff filed a "Motion for Summary Judgment … in Legal Opposition to the Defendants' Motion for Summary Judgment" [Doc. 69 at 1] and supporting materials in which he asserts that a genuine dispute of material fact exists for trial.[3]  He also complains about various Court rulings in this case, and he alleges that defense counsel have engaged in misconduct.  [<u>Id.</u>]. The Defendants filed a Reply and additional exhibits, arguing that the Plaintiff's Motion is untimely and improper, denying any misconduct, and reiterating their summary judgment arguments.  [Docs. 70, 70-1, 70-2, 70-3, 70-4, 70-5, 71].  Having been fully briefed, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

---

[3] These materials include an "Affidavit" [Doc. 69 at 3]; "Memorandum of Law" [Doc. 69 at 5]; "Summary of Facts" [<u>id.</u> at 6]; "Appendix to Statement of Material Facts" [<u>id.</u> at 7]; and exhibits [Docs. 69-1, 69-2], none of which are verified [<u>see</u> Doc. 69 at 12].

3

(1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  To that end, only evidence admissible at trial may be considered by the

4

Court on summary judgment.  Kennedy v. Joy Technologies, Inc., 269 F.

App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the

evidence and any inferences from the evidence in the light most favorable to

the nonmoving party.  Anderson, 477 U.S. at 255.  Facts, however, "must be

viewed in the light most favorable to the nonmoving party only if there is a

'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 1776 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under
> Rule 56(c), the opponent must do more than simply
> show there is some metaphysical doubt as to the
> material facts ….  Where the record taken as a whole
> could not lead a rational trier of fact to find for the
> nonmoving party, there is no 'genuine issue for trial.'"
> Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,
> 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986)
> (footnote omitted).  "[T]he mere existence of some
> alleged factual dispute between the parties will not
> defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be
> no genuine issue of material fact."  Anderson v.
> Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct.
> 2505 (1986).  When opposing parties tell two
> different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury
> could believe it, a court should not adopt that version
> of the facts for purposes of ruling on a motion for
> summary judgment.

Scott, 550 U.S. at 380.

## III.  FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

Lieutenant Morton interviewed the Plaintiff on May 23, 2019 about a rape case that Lieutenant Morton was investigating.  [Doc. 60-2: Morton Decl. at ¶ 3].  During that interview, the Plaintiff told Morton that he "pleads the 5th."  [Id.].

The next day, May 24, 2019, Lieutenant Morton, Detective Purser, Officer Baucom, and other MPD personnel responded to the Plaintiff's residence to arrest him on warrants for second-degree forcible rape and other charges.  [Id. at ¶ 4].  The Plaintiff lived in a separate residence in the backyard of his mother's home.  [Id. at ¶ 5].  When officers first arrived at the scene, they met with the Plaintiff's mother in the front yard; she escorted officers to the backyard so that they could arrest the Plaintiff.  [Id. at ¶ 6].

According to the Defendants, officers made contact with the Plaintiff upon entering the backyard when they saw the Plaintiff was standing on his front porch.  [Doc. 60-2: Morton Dec. at ¶ 7; Doc. 60-3: Baucom Dec. at ¶ 5; Doc. 60-12: Gutierrez Dec. at ¶¶ 4-5; Doc. 60-13: Purser Dec. at ¶ 5].

6

According to the Plaintiff, Officer Baucom "grabbed [him] out the door of [his] room…." [Doc. 1: Complaint[4] at 6, 11].

Lieutenant Morton told the Plaintiff that he was being arrested for active warrants. [Doc. 60-2: Morton Dec. at ¶ 8]. Officer Baucom handcuffed the Plaintiff using two sets of linked handcuffs due to the Plaintiff's size. [Doc. 60-3: Baucom Dec. at ¶ 7]. The Plaintiff did not resist being taken into custody. [Id. at ¶ 8].

According to the Defendants, the officers did not use any force other than gently placing handcuffs on the Plaintiff's wrists [Doc. 60-2: Morton Dec. at ¶ 10; Doc. 60-3: Baucom Dec. at ¶ 8; Doc. 60-12: Gutierrez Dec. at ¶ 8; Doc. 60-13: Purser Dec. at ¶ 9], and Officer Baucom slowly walked the Plaintiff from the backyard to his police vehicle without incident [Doc. 60-3: Baucom Dec. at ¶ 9]. According to the Plaintiff, Officer Baucom "push[ed] [the Plaintiff] to the car" while the Plaintiff was "bound in handcuffs, … hurt and injured…." [Doc. 1: Complaint at 6, 11].

When the Plaintiff and Officer Baucom arrived at the vehicle, Baucom states that he opened the rear passenger door and moved the seatbelt out

---

[4] Although the Plaintiff filed an Amended Complaint, his original Complaint was verified. A verified complaint is equivalent to an affidavit in opposition to summary judgment, even when the Amended Complaint that superseded it is unverified. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

7

of the Plaintiff's way to allow the Plaintiff easier access to the backseat. [Doc. 60-3: Baucom Dec. at ¶ 10]. The Plaintiff sat down in the backseat and Officer Baucom closed the door without injuring the Plaintiff. [Id. at ¶ 11]. According to the Plaintiff, Officer Baucom used racial slurs and "slammed [Plaintiff's] head against the door," such that "the hard impact injured [Plaintiff's] neck and back…" in an act of "rac[ially] motivated and deliberate[ly] malic[ious] violence and rage…" which made the Plaintiff "fear[] for [his] life…." [Doc. 1: Complaint at 6, 11].

Officer Baucom then drove the Plaintiff to MPD. [Doc. 60-3: Baucom Dec. at ¶ 12]. During the drive, the Plaintiff asked Baucom about the charges against him and Baucom answered his questions. [Id. at ¶ 13]. During the drive, the Plaintiff never complained of any injuries, pain, or excessive force, did not request medical treatment, and showed no indication of injury or pain. [Id. at ¶ 14]

Upon arriving at MPD, Officer Baucom opened the rear passenger door to allow the Plaintiff out of the vehicle. [Id. at ¶ 15]. Officer Baucom assisted the Plaintiff's leg out of the vehicle, and the Plaintiff stepped out of the vehicle himself. [Id. at ¶ 16]. Officer Baucom escorted the Plaintiff up a flight of stairs into the MPD by gently holding the Plaintiff's arm to ensure he did not trip as he walked up the stairs. [Id. at ¶ 17]. Officer Baucom escorted

the Plaintiff into the MPD interview room, and the Plaintiff sat down in a chair. [Id. at ¶ 18].

Once the Plaintiff was seated in the interview room, Lieutenant Morton stuck his head in the room and said "You still don't want to talk, right?" and the Plaintiff responded "No, I want to call my lawyer now." [Doc. 60-2: Morton Dec. at ¶ 12]. A conversation then ensued about the Plaintiff contacting his lawyer. Lieutenant Morton denies ever touching the Plaintiff during this conversation. [Doc. 60-2: Morton Dec. at ¶ 13]. The Plaintiff did not complain of injury, pain, or excessive force, and did not request any medical attention. [Doc. 60-2: Morton Dec. at ¶ 14]. After the discussion, Lieutenant Morton left the room and the Plaintiff fell asleep, snoring, for approximately 20 minutes. [Doc. 60-2: Morton Dec. at ¶ 15]. When Lieutenant Morton came back into the interview room, he asked the Plaintiff to consent to a buccal swab, and the Plaintiff declined. [Doc. 60-2: Morton Dec. at ¶ 16]. Lieutenant Morton told the Plaintiff that Baucom was going to transport him to UCJ. [Doc. 60-2: Morton Dec. at ¶ 17].

After the Plaintiff and Officer Baucom left the interview room, the Plaintiff told officers that he needed to use the restroom, and he was allowed to do so. [Doc. 60-2: Morton Dec. at ¶ 18]. Officer Baucom then escorted the Plaintiff back to his police vehicle without incident. [Doc. 60-2: Morton

9

Dec. at ¶ 19]. As the Plaintiff got in the backseat, Officer Baucom's only physical contact with him was to touch the Plaintiff's foot to ensure it would not get caught in the car door. [Doc. 60-2: Morton Dec. at ¶ 20]. Officer Baucom shut the door without injuring the Plaintiff and transported him to UCJ. [Doc. 60-2: Morton Dec. at ¶ 21]. Detective Purser and Lieutenant Morton did not go to UCJ with the Plaintiff and Officer Baucom. [Doc. 60-2: Morton Dec. at ¶ 22; Doc. 60-4: Plaintiff's Depo. at 4 (Plaintiff only spoke to Lt. Morton once after his arrest, when the Plaintiff pled the Fifth and asked for counsel)].

When the Plaintiff arrived at UCJ, he was medically screened. It was noted that he did not have any visible signs of illness, injury, bleeding, pain, or other symptoms suggesting the need for immediate emergency medical referral. [Doc. 60-5: UCJ Inmate Med. Questionnaire at 1]. However, the Plaintiff claims in his Complaint that he had sustained neck and back injuries and was denied medical treatment at UCJ. [Doc. 1: Complaint at 11].

The Defendants deny that they used excessive force against the Plaintiff; witnessed any other officer do so; heard the Plaintiff make any complaints of injury, pain, or excessive force or make any request for medical attention; and never retaliated against him or denied him medical treatment. [Doc. 60-2: Morton Dec. at ¶¶ 14, 25-31; Doc. 60-3: Baucom Dec. at ¶¶ 14,

10

27-32; Doc. 60-12: Gutierrez Dec. at ¶¶ 24-30; Doc. 60-13: Purser Dec. at ¶¶ 14-18].

The Defendants have submitted video files containing the footage from body cameras worn by Officers Baucom [Doc. 65, Exs. 5, 7] and Alan Gutierrez[5] [id. at Ex 8]; the interview room at the MPD [id. at Ex. 6]; and Officer Baucom's in-car camera [id. at Exs. 9, 10]. Footage from Officer Baucom's body camera at the time of the Plaintiff's arrest [id. at Ex. 5] shows the following events:

| | |
|---|---|
| 14:39:24 | Officer Baucom's body worn camera begins recording while Baucom is still driving to the Plaintiff's residence for the arrest |
| 14:40:19 | Officer Baucom parks in front of the residence and exits his vehicle |
| 14:41:06 | All officers enter the residence's backyard with the Plaintiff's mother and encounter the Plaintiff on his front porch |
| 14:41:39 | Officers place two sets of handcuff's on the Plaintiff's wrists behind the Plaintiff's back |

---

[5] Officer Gutierrez is not a Defendant in this case. Officer Gutierrez's body-worn camera largely captures the same events as Officer Baucom's body-worn camera, from a different angle.

14:42:03    Officer Baucom pats down the Plaintiff

14:43:04    Officer Baucom walks the Plaintiff to his police vehicle

14:43:50    Officer Baucom leans into the vehicle and moves the seatbelt out of the way so that the Plaintiff can sit down in the backseat

14:44:01    The Plaintiff says "I'm too tall for this seat," Officer Baucom responds "I've seen bigger dudes get in there, man," and then the Plaintiff sits in the vehicle without assistance

14:44:09    Officer Baucom asks the Plaintiff "You're good?" and unsuccessfully attempts to fasten Plaintiff's seatbelt; the Plaintiff asks for his hands to be secured in the front

14:44:31    Plaintiff states that he has "a bad back and a bad knee," and Officer Baucom explains that he cannot be cuffed in front pursuant to policy

14:44:41    Officer Baucom closes the door without injuring the Plaintiff

14:46:58    Officer Baucom enters the driver's seat and answers the Plaintiff's questions about the reason for his arrest

14:49:12    Officer Baucom transports the Plaintiff to MPD while continuing to answer the Plaintiff's questions

14:50:45     The Plaintiff complains that "Sitting back here I'm going to get some cramps" and Officer Baucom responds "We'll try and get there as soon as possible"

15:00:56     The vehicle arrives at MPD and parks

15:01:52     Officer Baucom exits the vehicle, opens the rear passenger door, and assists the Plaintiff's right leg out of the car's door jamb

15:02:20     The Plaintiff exits the vehicle by himself

15:02:55     Officer Baucom escorts the Plaintiff up a flight of stairs into the MPD

15:03:34     Officer Baucom escorts the Plaintiff into the MPD interview room and the Plaintiff sits in a chair by himself; the Plaintiff again asks to be cuffed in the front, and Officer Baucom responds "We'll ask CIB when they get here"

15:04:54     Lieutenant Morton puts his head into the doorway of the interview room and says to the Plaintiff, "You still don't want to talk, right?" and the Plaintiff responds "No, I want to call my lawyers now;" Morton informs the Plaintiff that he can contact his lawyer once he gets to the jail

Video footage from the MPD interview room [Doc. 65, Ex. 6] begins during the conversation between the Plaintiff and Lieutenant Morton and partial overlaps the footage from Officer Baucom's body camera, and additionally shows:

11:04:48   The conversation between Lieutenant Morton and Plaintiff continues

11:10:28   Lieutenant Morton exits the interview room, leaving the Plaintiff alone in the interview room

11:17:52   Plaintiff begins snoring

11:31:12   Lieutenant Morton enters the interview room and requests a DNA swab, which the Plaintiff refuses

11:32:10   Officer Baucom escorts the Plaintiff out of the interview room

11:33:23   From outside the interview room, the Plaintiff appears to ask for the restroom; he is told that he will have to keep the door open and that, although his cuffs have been loosened, he must remain handcuffed behind him pursuant to policy

11:35:17   Sounds of water running, then walking

14

The second video from Officer Baucom's body worn camera [Doc. 65, Ex 7] begins as he and the Plaintiff exit the MPD and depicts the following events:

15:35:25      Officer Baucom escorts the Plaintiff out of the MPD into the police vehicle

15:36:30      The Plaintiff gets into the vehicle's backseat by himself

15:36:47      Officer Baucom tucks in the Plaintiff's right foot to clear it from the car's door jamb, then closes the door

15:37:08      Officer Baucom enters the vehicle and drives the Plaintiff to UCJ

15:49:49      The vehicle arrives at UCJ

Two video excerpts taken from Officer Baucom's in-car camera while Baucom transported the Plaintiff from his home to MPD, and then from MPD to UCJ [Doc. 65, Exs. 9 and 10, respectively] depict the Plaintiff's face and reveal no signs of pain, injury, or distress.

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment

#### 1. Excessive Force

The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" in the course of making an arrest. Graham

15

v. Conner, 490 U.S. 386, 388 (1989); Meyers v. Baltimore Cnty., Md., 713 F.3d 723 (4th Cir. 2013).  Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," taking into account "the severity of the crime at issue, whether the suspect poses an immediate to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight."  Graham, 490 U.S. at 396, 399.  An officer is "authorized to take such steps as [are] reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop."  United States v. Hensley, 469 U.S. 221, 235 (1985).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them."  Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002)).  A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  Id. at 204.

Here, the Plaintiff has failed to present a forecast of evidence from which a reasonable jury could conclude that the any of the Defendants used

excessive force or failed to intervene in order to prevent the use of such force. The Plaintiff's forecast of evidence consists only of the allegations in his verified Complaint that Defendants Baucom, Purser, and Morton used excessive force and/or failed to intervene. This forecast of evidence, however, is "so utterly discredited by the record that no reasonable jury could . . . believe[ ] him." Scott, 550 U.S. at 380. The videos of these events demonstrate that the Defendants' physical contact with the Plaintiff was objectively reasonable and was reasonably necessary in order to place the Plaintiff in handcuffs, assist him into and out of a police vehicle for transport, escort him in an interview room, and transport him to UCJ. The video evidence also reveals that at no time did the Plaintiff appear injured or complain of excessive force, pain, or injury. [See Doc. 65, Ex. 5-8]. Furthermore, the Plaintiff's claim that Defendant Morton used excessive force against him while at UCJ is belied by the Plaintiff's own deposition testimony that his only encounter with Defendant Morton occurred in the MPD interview room. [Doc. 60-4 at 4; see also Doc. 60-2: Morton Dec. at ¶ 22].

Accordingly, the Court concludes that the Defendants are entitled to judgment as a matter of law on the Plaintiff's excessive force and failure to protect claims. The Court further concludes that the Defendants are entitled

to summary judgment with respect to the North Carolina assault claims.  See generally Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994) (on summary judgment, "[t]he parallel state law claim of assault and battery is subsumed within the federal excessive force claim…."); see, e.g., Hunt by and through Muse v. Smith, 2020 WL 3066616 (E.D.N.C. June 9, 2020) (because the court concluded that the defendant did not violate the Fourth Amendment by using excessive force, summary judgment was also granted on the parallel state law claims of assault and battery).

The Court further concludes, after carefully reviewing the Plaintiff's allegations and the parties' forecasts of evidence, that these claims are frivolous and malicious.  See 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1).

## 2.    Retaliation

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right."  Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000).  Prison officials may not retaliate against an inmate for exercising a constitutional right.  See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978).

In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the

18

defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Id.

Construing the allegations liberally, the Plaintiff contends that Defendant Morton withheld medical treatment at UCJ for the injuries he received as the result of excessive force, in retaliation for the Plaintiff having exercised his right to remain silent. [Doc. 14: Am. Compl. at 4, 11].

The Plaintiff has failed to present a forecast of any evidence that Defendant Morton retaliated against him by withholding medical treatment at UCJ. As discussed in Section A.1, *supra*, the Plaintiff's excessive force and failure to intervene claims are conclusively refuted by the forecast of objective evidence. The forecast of objective evidence likewise reveals that the Plaintiff was not injured between his arrest and his arrival at UCJ, and

that he never requested medical care during these events. [See Doc. 65, Ex. 5-8]. Nor has the Plaintiff forecast any credible evidence that Defendant Morton somehow prevented him from receiving medical care at UCJ. The record reflects that the Plaintiff was medically screened upon arriving at UCJ, that he was not injured, and that no medical care was needed. [See Doc. 60-5: UJC Inmate Med. Questionnaire]. Moreover, the Plaintiff admitted in his deposition that he only met with Defendant Morton in the MPD interview room. [Doc. 60-4: Plaintiff's Depo at 4; Doc. 65, Ex 6]. The Plaintiff has not forecast any evidence that he interacted with Defendant Morton at UCJ whatsoever, much less any evidence of an interaction where retaliation occurred. To the contrary, the Defendants have forecast evidence that Defendant Morton did not retaliate against the Plaintiff, deny him medical care, or interact with him at UCJ whatsoever. [Doc. 60-2: Morton Dec. at ¶¶ 27-31]. The Plaintiff's version of events is so utterly discredited by the record that no reasonable jury could have believed him. See Scott, 550 U.S. at 380. Defendant Morton is, therefore, entitled to judgment as a matter of law on the Plaintiff's retaliation claim.

The Court concludes, after carefully reviewing the Plaintiff's allegations and the parties' forecasts of evidence, that the retaliation claim is frivolous and malicious. See 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1).

### 3.    Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*).  "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation."  E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted).  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity. Therefore, the Court grants summary judgment for the Defendants on this ground as well.

## B. Plaintiff's Motion for Summary Judgment

The Plaintiff purports to seek summary judgment "in Legal Opposition" to the Defendants' Motion for Summary Judgment. [Doc. 69]. He contends that there is a genuine dispute of material fact for trial, and that impropriety and misconduct have occurred in these proceedings.[6] He argues, *inter alia*, that the Court sealed his medical records without his consent [Doc. 69-7]; that the Court issued an order and subpoena permitting Defendants' counsel to intercept his jail mail [Doc. 69 at 11]; and that counsel for Defendants forged his signature on a medical release form, altered his deposition testimony, and intercepted his jail mail [id. at 7, 10-11].

The Plaintiff's Motion is untimely. The Plaintiff filed his Motion on September 21, 2021,[7] 19 days after the motions deadline. [Doc. 30]. The Court may, for good cause, extend the time when an act may or must be done on a motion made after the time has expired "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, the Plaintiff has failed to demonstrate that his untimely Motion for Summary Judgment

---

[6] The Court will not attempt to address all of the Plaintiff's allegations of misconduct and impropriety. Any claim or argument not separately addressed in this discussion has been considered and rejected.

[7] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to a § 1983 case).

was filed late due to excusable neglect, nor is the untimely filing supported by good cause.[8]

Moreover, the Plaintiff's allegations of impropriety and misconduct are without merit. The Plaintiff's argument that the Court improperly sealed his medical records in the Court's record without his consent is nonsensical. [Doc. 69-7]. The Court sealed those records on Defendants' Motion to protect the Plaintiff's confidential medical information from public view.[9] [Docs. 62, 68]. Although the records were sealed in the Court's file, counsel for Defendants provided the Plaintiff with an unsealed copy of those records. [See Doc. 71]. The Plaintiff's present request to unseal his private medical records on the Court's docket would serve no purpose other than to expose his confidential medical information to the public's view.

The Plaintiff's contention that the Court issued an order and subpoena allowing Defendants' counsel to intercept his jail mail is incorrect. [Doc. 69 at 7, 10-11]. No such documents exist or were ever entered in this case.

The Court has carefully examined the Plaintiff's allegations that Defendants' counsel engaged in serious acts of misconduct by forging his

---

[8] To the extent that the Plaintiff's filing can be construed as a Response to the Defendant's Motion for Summary Judgment, the Plaintiff's request for summary judgment within his pleading is improper See LCvR 7.1(c)(2) ("Motions shall not be included in responsive briefs….").

[9] The Plaintiff did not object to the Motion within the response time.

signature, altering his deposition testimony, and intercepting his jail mail. The Court has carefully reviewed the Defendants' response, the Court's records, and the relevant exhibits and finds that the Plaintiff's allegations of misconduct are frivolous, conclusively refuted by the record, and warrant no serious discussion. See generally Scott, 550 U.S. at 380. Accordingly, the Plaintiff's allegations of impropriety and misconduct are dismissed and denied.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, dismisses the Plaintiff's "Motion for Summary Judgment Filed in Legal Opposition to the Defendants' Motion for Summary Judgment," and finds the Plaintiff's claims to be frivolous and malicious.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 60] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Plaintiff's "Motion for Summary Judgment Filed in Legal Opposition to the Defendants' Motion for Summary Judgment" [Doc. 69 at 1] is **DISMISSED and DENIED**.

3.     The Court finds that the Plaintiff's claims are frivolous and

       malicious pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: June 21, 2022

Martin Reidinger
Chief United States District Judge